IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | :    CRIMINAL ACTION |
| | : |
| v. | :    NO. 10-620-1 |
| | : |
| RAMEL MOTEN | : |
| | : |

MEMORANDUM

**TUCKER, J.**                                                                                                                                                                                   **June 6, 2022**

Presently before the Court is Ramel Moten's: (1) pro se motions to vacate pursuant to 28 U.S.C. § 2255 (ECF No. 944) and the First Step Act (ECF Nos. 981 and 982); (2) a counseled supplemental motion to vacate under 28 U.S.C. § 2255 (ECF No. 1000); and (3) the Government's Response in Opposition (ECF No. 1054). Upon careful consideration of the Parties' submissions, and for the reasons outlined below, Moten's Motions are **DENIED**.

**I.     FACTUAL AND PROCEDURAL BACKGROUND[1]**

From October 2001 through October 6, 2010, Ramel Moten ("Petitioner" or "Moten") was involved in the criminal organization known as the "Harlem Boys" or "Young Hit Men." The Harlem Boys controlled drug trafficking in and out of Bartram Village Housing Development located in Southwest Philadelphia. Terrence Hamm initially led the organization from October 2001 through April 2007. He obtained bulk quantities of drugs from various sources, prepared them for sale, and distributed them himself through a network of street level drug dealers.

---

[1] This section draws primarily from Petitioner's Supplemental Motion to Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 1000) and the Government's Response (ECF No. 1054).

In April of 2007, after the execution of several federal search warrants, Hamm "stepped back" from his involvement, at which time Petitioner assumed his role. Moten was a supplier, distributor of illegal narcotics, and the lead gunman for the enterprise. He committed multiple acts of violence with other members to "protect their turf" and frequently provided firearms to his coconspirators to use in robberies, assaults, and other crimes.

In total, the Harlem Boys attempted, threatened to commit, and committed acts of violence, including murder, assault, and robbery to protect their criminal operations. They promoted a climate of fear through this violence which intensified under Moten's leadership.

On September 22, 2012, a federal grand jury returned the first indictment against Petitioner, but a year later, an 89-count superseding indictment revised the original, naming 20 defendants in total. Seven of the defendants pled guilty to a RICO conspiracy charge and numerous related drug trafficking, firearms, and violent crime offenses. Five other defendants pled guilty to a drug conspiracy count and related drug trafficking offenses. Nine of these defendants testified as witnesses at trial.

Trial commenced on September 24, 2012 and lasted 10 weeks before a jury convicted the seven defendants of most of the charges in the superseding indictment on December 6, 2012. The jury convicted Moten of thirty-one counts, including various drug, firearm, racketeering, and assault offenses. Relevant to the motions before this Court, the jury convicted Moten of: (1) four counts of using and carrying a firearm during and in relation to a crime of violence, in violations of 18 U.S.C. § 924(c)[2]; and (2) twelve counts of possession of a firearm and/or ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1)[3]. The jury acquitted Moten of two counts

---

[2] Counts 45, 73, 80 and 85.
[3] Counts 49 51, 52, 58, 61, 62, 64, 74, 76, 77, 81, and 88.

of assault in aid of racketeering, three 924(c) charges, and one count each of attempted Hobbs Act robbery and possession of ammunition by a felon.

On September 2, 2013, the district court imposed an aggregate sentence of life plus 30 years imprisonment which the Third Circuit affirmed on May 11, 2015; Petitioner appealed again but the Supreme Court denied certiorari on October 5, 2015. On September 19, 2019, Petitioner filed his pro se Motion to Vacate Sentence, pursuant to § 2255. ECF No. 941; *see also* ECF No. 944. There, Plaintiff raised nine claims of ineffective assistance of counsel and one claim for relief under *Johnson v. United States*, 576 U.S. 1059 (2015), asserting that his § 924(c) conviction is unconstitutional.

The Government filed a motion to stay while relevant *Johnson* issues were considered by the appellate courts; this Court ultimately granted the stay. Meanwhile, in May of 2019, Petitioner filed two pro se motions for sentence reductions, this time, pursuant to the First Step Act. In February of 2020, this Court appointed the Federal Community Defender Office to represent Petitioner in any claims arising under *Rehaif v. United States*, 139 S. Ct. 2191 (2019) or *United States v. Davis*, 139 S. Ct. 2319 (2019).

On June 18, 2020, Petitioner, through counsel, filed a Supplemental Motion to Vacate pursuant to 28 U.S.C. § 2255. *See* ECF No. 1000. In this motion, Moten restates his challenge to his § 924(c) conviction under *Johnson* and raises a new claim challenging his § 922(g) conviction under *Rehaif*.

## II.     STANDARD OF REVIEW

A federal prisoner in custody under sentence of a court may move the court to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255. *Davis v. United States*, 417 U.S. 333, 343 (1974); *Okereke v. United States*, 307 F. 3d 117, 120-21 (3d Cir. 2002). Section 2255

provides four avenues for which relief may be claimed: (1) that the sentence imposed violated the Constitution or laws of the United States; (2) that the court lacked jurisdiction to impose such a sentence; (3) that the sentence was in excess of the maximum authorized by law; and (4) that the sentence is otherwise subject to collateral attack. *Hill v. United States*, 368 U.S. 424, 426-27, (1962) (quoting 28 U.S.C. § 2255 (a)).

In rendering a decision on a defendant's § 2255 motion, "a district court must 'accept the truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" *Johnson v. United States*, 294 F. App' x 709, 710 (3d Cir. 2008) (quotation omitted). However, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Thomas*, 221 F.3d 430, 427 (3d Cir. 2000).

Furthermore, "a federal court may decline to review an alleged error where concurrent sentences were imposed on separate counts, where the alleged error is associated with only one count, and where the remaining sentences are unassailable." *Nosov v. Schuylkill FCI*, 634 Fed. App' x. 380 (3d Cir. 2016) (citing *United States v. McKie*, 112 F. 3d 626, 628 (3d Cir. 1997)). "The theory is that because the defendant remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility. The practice is eminently practical and conserves judicial resources for more pressing needs." *Jones v. Zimmerman*, 805 F.2d 1125, 1128 (3d Cir. 1986). "This doctrine should be applied only where it is apparent that a defendant will not suffer collateral consequences from the unreviewed conviction." *United States v. Robinson*, 2021 U.S. Dist. 2021 WL 508399 at *2 (E.D. Pa. 2021) (citing *United States v. Clemons*, 943 F.2d 741, 743 n.2 (3d Cir. 1988)).

### III. DISCUSSION

#### A. Ineffective Assistance of Counsel Claims

Sixth Amendment ineffective assistance of counsel claims are measured against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. In making this determination, the court's scrutiny of counsel's performance must be "highly deferential." *Id*. at 689. The court should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. In short, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, that challenged action might be considered sound trial strategy." *Id*. (quotation omitted).

Second, the petitioner must show that counsel's deficient performance "prejudiced the defendant" by "depriv[ing] the [petitioner] of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

"A reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at. 694, but is less than a preponderance of the evidence. *Id*. at 693-94. Moreover, the determining court must consider "whether the [petitioner] was prejudiced

by the 'denial of the entire judicial proceeding…to which he had a right.'" *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470 (2000)).

### i. Claim 1 – Trial counsel failed to advise Petitioner that he faced a possible mandatory life sentence

Petitioner's first asserts that trial counsel was ineffective because he failed to properly advise him regarding the penalties he faced if convicted. Counsel informed Moten that the prosecution could not use one of his prior convictions to enhance his sentence under 21 U.S.C. § 851; thus, Petitioner contends he was under the impression that he would not receive a life sentence if he went to trial.

Even if Petitioner can successfully satisfy the first *Strickland* prong, that counsel's representation fell below an objective standard of reasonableness, which he has not, Moten is unable to prove he was prejudiced. Because Petitioner was charged with a conspiracy to distribute 280 grams or more of cocaine base ("crack") and marijuana[4], he faced a mandatory statutory minimum sentence of 20 years to a maximum of lifetime imprisonment. Thus, he faced a statutory *maximum* sentence of life imprisonment, not a mandatory lifetime imprisonment. Moreover, the sentencing court exercised its discretion when it considered the sentencing factors under § 3553(a) and imposed the lifetime sentence based on an offense level of 47 and a criminal history category of VI.

### ii. Claim 2 – Counsel failed to tell Petitioner that the § 924(c) counts must be consecutive

Petitioner asserts counsel failed to advise him that all the 924(c) counts required a mandatory 25 years minimum that had to run consecutive which amounted to a 130-year

---

[4] In violation of 21 U.S.C. §§ 846, (b)(1)(A) and (b)(1)(D).

6

sentence. Moten contends that had he known that all his 924(c) counts required the mandatory 25-year consecutive sentence, he would have accepted the government's thirty-year plea offer.

This claim is meritless because Moten fails to prove either of the *Strickland* prongs. First, Petitioner acknowledges that the plea discussions were global in nature and required all defendants to accept the offer. This acknowledgement proves that the prosecution did not offer a standalone offer to Petitioner, but instead, the offer was contingent on all defendants accepting it. Thus, Counsel could not have been ineffective if the Government did not make plea offer. Second, Petitioner cannot show prejudice, because, as discussed above, the sentencing court imposed a term of lifetime imprisonment on each of Counts 1 and 2, after weighing the § 3553(a) factors. Hence, even if counsel failed to inform him of the 130-year consecutive sentence imposed, Petitioner would have still received a life sentence on the other two counts.

### iii.    Claim 3 – Counsel was ineffective during global plea discussions

Petitioner's third claim alleges counsel failed to inform him that the Government offered thirty years to life sentence during the global plea discussions. Petitioner contends he wanted twenty years but was "willing to go higher if he had no other choice." More importantly, Moten argues that counsel should have advised him that if he accepted the 30 to life plea, he could argue for a downward departure based on the other defendants' unwillingness to accept their offers. If Petitioner knew of this downward departure argument, he asserts he would have accepted the 30 to life plea.

Again, Moten's arguments must fail. As stated in Section ii of this Memorandum, the Government did not make an individual plea offer to Moten but instead made a global plea offer to all defendants. Thus, counsel cannot be ineffective for failing to accept a nonexistent offer.

Moreover, even if there was an offer, Moten would not have received a downward departure as he suggests. A petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *id*., but is less than a preponderance of the evidence. *Id*. at 693-94 Here, as the Government points out, Moten was the leader of a multi-defendant racketeering enterprise responsible for polluting an entire neighborhood with drugs which included shootings and assaults for nearly 10 years. Even if he accepted the imagined 30-year plea offer, the sentencing court would not have granted a downward departure as this is the same court that chose to exercise its discretion and impose a life sentence on Counts 1 and 2.

        **iv.    Claim 4 – Counsel was ineffective at sentencing when he failed to object to the § 851 enhancements**

Petitioner contends that although jury selection and trial began on September 14 and 24, 2012, respectively, the prosecution still filed an § 851 enhancement notice after trial started on November 2, 2012. However, counsel failed to object to this enhancement which caused his sentence to rise from 20 to 30 years on Counts 41, 47, 60, and 89. Petitioner contends his sentence was additionally enhanced on Count 2 from a mandatory minimum of 10 years to 20.

The Government argues Petitioner's claim lacks merit because he cannot show he suffered any prejudice. This Court agrees. Petitioner still possessed a statutory maximum exposure of life imprisonment on Count 2; hence, the § 851 enhancement notice filed after trial began did not change the statutory maximum penalty. Moreover, the lifetime sentence the court imposed was discretionary, and was in no way impacted by the late enchantment notice.

Moten also did not suffer prejudice from the sentence he received on Counts 41, 47, 60, and 89 because the court imposed 30 years imprisonment on each count and ran them concurrent

with each other, as well as with Counts 1 and 2. As the Government's brief properly asserts, those sentences were essentially absorbed into the sentences imposed on Counts 1 and 2 and had no impact on the sentence Moten ultimately received. Thus, this claim must be dismissed.

### v. Claims 5 and 6 – Counsel was ineffective when he failed to move to dismiss Counts 42 and 48

Petitioner asserts that Counts 42 and 48 improperly charged him with violations under § 924(c). Petitioner asserts that § 924(c)[5] criminalizes two separate offenses: (1) using or carrying a firearm during and in relation to a drug trafficking crime; and (2) possessing a firearm in the furtherance of a drug trafficking crime. For Count 42, Petitioner specifically contends the indictment charged him with "possessing a firearm during and relation to" a drug trafficking crime but indicting him based on the *conduct* from the "possession" offense (emphasis added). The jury instructions tracked the indictment's error and intermixed elements of the two different crimes.

For Count 48, Petitioner asserts that although he was properly charged under § 924(c), the jury instructions improperly cross-matched offenses. ECF No. 944 at 15. He contends because he was indicted on a charge of unlawful possession of a firearm, but convicted of a different offense, unlawful use and carrying of a firearm, the trial court's alteration of the indictment per se prejudiced him.

Claims 5 and 6 of Moten's petition must fail because he is unable to show prejudice. Counsel should have moved to dismiss the indictment as to Count 42 and objected to the error in jury instruction as to Count 48. However, that alone is not enough to satisfy *Strickland*. Both errors are not enough to have impacted the outcome of the trial. Petitioner, as the leader of the

---

[5] Section 924(c) applies to "any person who, during and in relation to any crime of violence or drug trafficking crime…for which the person may be prosecuted in a court of the United States, used or carries a firearm, or who, in furtherance of any such crime, possesses a firearm…" 18 U.S.C. § 924(c)(1)(A)(i).

9

drug enterprise "Harlem Boys," was constantly armed. Specifically, he was armed during the commission of crimes that gave rise to the two counts when officers recovered guns and drugs controlled by him. Moreover, Petitioner fails to allege that he did not possess the firearms in furtherance of the drug trafficking, nor does he set forth adequate facts to support this contention. *See Mayberry v. Petsock*, 821 F.2d 179, 187 (3d Cir. 1987). As the Government correctly argues[6], evidence against Moten was sufficient to prove possession "in furtherance," and even if trial counsel had objected, the outcome would have been the same. Thus, Claims 5 and 6 are meritless and must be denied.

### vi.   Claim 7 – Appellate counsel was ineffective for failing to challenge improper jury instructions pursuant to *Rosemond v. United States*

Petitioner asserts that the jury instructions on Counts 73, 80, and 85 are improper after the Supreme Court's decision in *Rosemond v. United States*, 572 U.S. 65 (2014) and appellate counsel was ineffective when he failed to raise this issue on direct appeal.

In *Rosemond*, the Supreme Court held "for purposes of aiding and abetting law, a person who actively participates in a criminal scheme knowing its extent and character intends that scheme's commission." *Id*. at 77. "An active participant in a drug transaction has the intent needed to aid and abet a §924(c) violation when he knows that one of his confederates will carry a gun. In such a case, the accomplice has decided to join in the criminal venture, and share in its benefits, with full awareness of its scope—that the plan calls not just for a drug sale, but for an armed one." *Id*. at 77-78. "For all that to be true, though, the §924(c) defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a

---

[6] The Government cites *United States v Iglesias*, 535 F,3d 150, 157 (3d Cir. 2008), in which the Third Circuit found that sufficient proof of "in furtherance" requirement "easily" satisfied in materially identical circumstances where guns were found in close proximity to drugs and packaging materials.

confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an *armed* offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun." *Id*. at 78.

With respect to the affirmative-act requirement, the Court stated that a defendant may be guilty of a §924(c) offense without proof that he participated in every component of the crime, and therefore, the underlying crime of violence or drug trafficking crime alone is sufficient. *Id*. at 74-75.

As a preliminary matter, Petitioner's arguments as to Count 80 must be dismissed because he was not charged as an aider and abettor in Count 80, nor did the trial court instruct the jury on a aiding and abetting theory of liability.

Next, Moten's ineffective assistance of counsel claims as to Counts 73 and 85 are also meritless because the evidence clearly demonstrated that Moten actively participated in the crimes underlying each of his § 924(c) counts. Petitioner again makes vague accusations without facts to support his argument. Evidence shows that Moten directed coconspirators to retrieve guns and shoot victims while he also possessed and used a gun himself during other violent incidents. Summaries of Petitioner's underlying violent crimes which form the basis for Counts 73, 80, and 85 show that none of the convictions rested on an aiding and abetting theory, but instead, Moten possessed the gun or directed others use them.

Moreover, the jury instructions in Moten's case were sufficient. The instructions in the case at hand differs than that of the defendant in *Rosemond* because the court here instructed the

jury on a stricter standard of proof than what *Rosemond* required. As the Government properly argues, the courts instructions required: (1) advance knowledge of the offense; (2) an intent to further it; and (3) an act to further it. In contrast, the *Rosemond* Court only required that the defendant's act involved the predicate crime, not the employment of a firearm. Additionally, like the *Rosemond* Court, the trial court required the prosecution to prove that Moten knew that the offense charged was going to be committed or was being committed by the principal.

Finally, even if appellate counsel failed to raise this issue on appeal, Petitioner cannot show he suffered prejudice. As the Supreme Court held, appellate counsel is not required to advance every plausible argument that could be made. *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Petitioner has not alleged nor made a sufficient showing that even if appellate counsel raised the issue, there was a reasonable likelihood of success; thus, this claim is also denied.

### vii.     Claim 9 – Counsel was ineffective for failing to object to the imposition of a lifetime sentence on Count 2

Petitioner argues that trial counsel was ineffective when the court imposed a life sentence on Count 2. He contends that his statutory maximum sentence on Count 2 should have been 40 years because the jury only determined that the crack involved was 28 grams.

This claim is meritless. The trial transcript shows the jury was required to answer an interrogatory that concerned the amount of crack involved in the drug conspiracy. The trial judge read:

> The interrogatory which reads "If guilty, do you unanimously agree by proof beyond a reasonable doubt that the quantity of the mixture or substance containing a detectable amount of cocaine base involved in the conspiracy which you have found was 280 grams or more?" The answer is yes.

Trial Transcript, December 6, 2012, p. 5-6. The record establishes the jury determined the requisite amount of crack to expose Petitioner to a potential lifetime imprisonment. Because the

claim lacks merit, counsel cannot be ineffective for failing to raise the claim; thus, this claim is also denied.

### viii. Claim 10 – Counsel was ineffective for failing to object to jury instructions on Count 1 of the RICO charges

Petitioner argues that the RICO jury instructions that the trial court provided were incorrect and counsel should have objected to them. Specifically, Petitioner asserts that the jury instruction should not have advised them that the government was not required to prove the enterprise engaged in or its activities affected interstate or foreign commerce.

Again, Petitioner's arguments lack merit. First, the trial court's instructions were consistent and nearly identical with the model instructions. *See* third Circuit Model Jury Instructions 6.18.1962D. It was also the correct statement of the law. Moreover, judges have discretion with regard to jury instructions as long as they are "fairly and adequately submit the issues in the case to the jury." *United States v. Petersen*, 622 F.3d 196, 203 (3d Cir. 2010) (quotations omitted). As stated above, Petitioner cannot successfully claim that counsel was ineffective for failing to raise a meritless claim.

## B. Counseled Claims

### i. Claim 8 – Petitioner's 18 U.S.C. § 924(c) convictions are unconstitutional under *Johnson and Davis*

In his pro se 2255 motion, Petitioner argues that three of his convictions are unconstitutional under *Johnson v. United States*, 135 S. Ct. 2551 (2015) and *United States v. Davis*, 139 S. Ct. 2319, 2336 (2019). Through counsel, Petitioner supplements and reasserts this claim. Moten argues that Counts 45, 73, 80, and 85 are unconstitutional because the predicate offenses are not categorically "crimes of violence" under the portions of the § 924(c) statute that remain valid after *Davis*.

As stated above, "a federal court may decline to review an alleged error where concurrent sentences were imposed on separate counts, where the alleged error is associated with only one count, and where the remaining sentences are unassailable." *Nosov*, 634 Fed. App' x. 380 (3d Cir. 2016) (citations omitted). "The theory is that because the defendant remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility. The practice is eminently practical and conserves judicial resources for more pressing needs." *Jones v. Zimmerman*, 805 F.2d 1125m 1128 (3d Cir. 1986).

Here, even if this Court were to agree with Petitioner and find his convictions unconstitutional, his sentence would remain the same. Moten was sentenced to life imprisonment, plus terms totaling 130 years on six § 924(c) charges. He only challenges the last 100 years of incarceration on his total life sentence, plus 130 years. Because granting his motion would not impact his sentence and this Court declines to review this claim, it is therefore dismissed without prejudice.

> ii. Claim 11 – Petitioner's 18 U.S.C. § 922(g) convictions are unconstitutional under *Rehaif*

Petitioner argues that his § 922(g) conviction is unconstitutional because the Supreme Court held that under the unlawful firearm possession statute, the Government must prove that the defendant knew he belonged to the relevant class of persons barred from possessing firearms or ammunition. The indictment did not charge Moten with knowing of his status as a person barred from possessing, nor did the evidence show he acted with knowledge of his status. Finally, Petitioner asserts the jury was not instructed that it must find beyond a reasonable doubt that Moten acted with knowledge of his status.

As Petitioner correctly asserts, the Supreme Court held that "in a prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2), the Government must prove both that the defendant knew he

possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200. However, the Court expressed no view "about what precisely the Government must prove to establish a defendant's knowledge of [his or her] status in respect to other § 922(g) provisions…" *Id*.

Petitioner's arguments fail for two reasons. First, as discussed in the section above, a district court can refuse to address an alleged error where concurrent sentences were imposed on separate counts. *Nosov*, 634 Fed. App' x. 380 (3d Cir. 2016); *see also Jones v. Zimmerman*, 805 F. 2d 1125, 1128 (3d Cir. 1986) ("The [concurrent sentence] theory is that because the defendant remains sentenced in any event, reviewing the concurrently sentenced counts is of no utility."). Here, the sentencing court imposed a statutory maximum term of 10 years on Petitioner's § 922(g) convictions, to run concurrently with one another and with the other counts imposed. The § 922 convictions ran concurrently to his two sentences of life imprisonment on Counts 1 and 2, 30 years on each of Counts 41, 47, 60, and 89, and 20 years on each of Counts 44, 72, and 79. Thus, this Court need not address this claim.

Second, even if this Court wished to address the claim, it would be futile. Moten's petition does not allege or present any evidence indicated that he did not know of his felon status. He has not shown, nor has he argued, that if the court instructed the jury as to the *Rehaif* requirement, there would have been a reasonable probability that the result of the sentencing proceeding would have been different.

### C. Petitioner's First Step Act Motions

Petitioner filed two pro se First Step Act Motions (ECF Nos. 981 and 982) alleging claims under Sections 401 and 403. However, both sections are inapplicable here.

Once a term of imprisonment is imposed, a district court rarely has the authority to modify it. 18 U.S.C. § 3582(c); *Dillon v. United States*, 560 U.S. 817, 819, 130 S. Ct. 2683, 177 L. Ed. 2d 271 (2010). Subsection 3582(c) of Title 18 gives defendants, the Director of the Bureau of Prisons ("BOP"), and the courts limited permission to seek to modify a sentence. Section 3582(c)(1)(A) permits reduction of a term of imprisonment upon a motion filed by the BOP Director or a defendant where "extraordinary and compelling reasons warrant such a reduction," and a "reduction is consistent with applicable policy statements issued by the Sentencing Commission," subject to certain procedural requirements. Courts deciding a Section 3582(c)(1)(A) motion must also consider the sentencing factors at 18 U.S.C. § 3553(a). Section 3582(c)(1)(B) permits modification of a term of imprisonment "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure." Section 3582(c)(2) gives courts authority to reduce a term of imprisonment upon its own motion, as well as that of the BOP Director or a defendant, for "defendants initially 'sentenced to a term of imprisonment based on' a United States Sentencing Guidelines (USSG) range that was later lowered by the United States Sentencing Commission." *United States v. Rivera-Cruz*, 904 F.3d 324, 325 (3d Cir. 2018).

Section 401 of the First Step Act amended the Controlled Substances Act (21 U.S.C. § 801 *et seq*.): subsection 401(a)(1) amended the definition of "serious drug felony" at 21 U.S.C. § 802(57); subsection 401(a)(2) took five years off the enhanced minimum sentence found at 21 U.S.C. § 841(b)(1)(A), and replaced the term "felony drug offense," with "serious drug felony." Section 401 of the First Step Act is, by its express terms, not applicable to cases wherein a sentence had already been imposed on the date of enactment, December 21, 2018. First Step Act § 401(c); *United States v. Aviles*, 938 F.3d 503, 510 (3d Cir.

2019). Defendant's sentence had long been imposed by December 21, 2018 when those provisions took effect, therefore he cannot benefit from them. First Step Act § 401(c); *Aviles*, 938 F.3d at 510.

Additionally, § 403 does not apply retroactively to earlier cases such as this one. *United States v. Hodge*, 948 F. 3d 160 (3d Cir. 2020). Accordingly, this Court fines a reduction in sentence is inappropriate and therefore these motions are denied.

### IV.     CONCLUSION

For the foregoing reasons, this Court denies Defendant's Motions (ECF Nos. 944, 981, 982, and 1000). This Court also declines to issue a certificate of appealability.

An appropriate order follows.